UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Iztok Plevnik
8962 Southeast Riverfront Terrace
Jupiter, FL 33469

       Plaintiff,

v.                    Case No.:

Eugene R. Sullivan
6317 Massachusetts Avenue
Bethesda, MD

       Defendant.

_____

## COMPLAINT FOR COMMON LAW FRAUD

Comes now, Plaintiff, Iztok Plevnik, through his undersigned attorney, and files this Complaint for common law fraud seeking compensatory and punitive damages against Defendant Eugene R. Sullivan for knowingly, falsely representing the authenticity of twin material counterfeit U.S. Department of Treasury letters to himself with the intent to deceive Plaintiff and on which Plaintiff reasonably relied to his detriment.  Plaintiff states as follows:

### SUBJECT MATTER JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's claim under 28 U.S.C. 1332 (a) because Plaintiff is a resident of Florida, Defendant is a resident of Maryland, and the amount in controversy exceeds $75,000.

### PERSONAL JURISDICTION

2.   This Court has personal jurisdiction over Defendant under DC Code 13-422 because the common law fraud occurred in the District of Columbia and Defendant's principal place of business is in the District of Columbia.

## VENUE

3.  Venue is proper in this District under 28 U.S.C. 1391(b) (2) and (3) because the events or omissions that gave rise to Plaintiff's claim occurred in the District of Columbia and there is personal jurisdiction over Defendant in the District of Columbia.

## PARTIES

4.  Plaintiff Iztok Plevnik was born in Slovenia in the Federal Republic of Yugoslavia.  In 2003, Plaintiff received a Green Card making him a permanent resident alien in the United States. Before receiving his Green Card, Plaintiff trained with U.S. Navy Seals and the U.S. Secret Service in counterterrorism.  In 2004, Plaintiff signed a contract as a kicker with the Miami Dolphins, which he ultimately decided to rescind. He then worked intermittently for eight years for The Flying Tigers, a contractor to the International Criminal Court, to retrieve evidence or persons relevant to ICC prosecutions.  Thereafter, he worked as an independent contractor for a wide spectrum of international organizations, businesses, and individuals.

5.  Defendant Eugene R. Sullivan is a lawyer in Washington, D.C. His principal place of business is 2550 M Street, N.W. Washington, D.C. 20037. He is also an advisor to First Wall Street CA. Defendant was Plaintiff's attorney at all times relevant to Plaintiff's Complaint.

## STATEMENT OF FACTS

6.  Plaintiff first met Defendant Sullivan at the end of 2017.

7. The purpose of the meeting was to explore Defendant Sullivan's assistance in Plaintiff's repatriating billions of dollars in cash from Africa to the United States Treasury. The cash had been scattered from Libya after the 2011 overthrow and killing of Libya's dictator Muammar Gaddafi.

8. Plaintiff met Defendant a second time in 2018 in Defendant's M Street office in the District of Columbia. Defendant was excited and stated he would inquire into how Plaintiff could repatriate billions of dollars to the United States Treasury from Africa.

9. In the fall of 2018, at a meeting at the Capitol Hilton in the District of Columbia between Plaintiff and Defendant Sullivan, the latter's excitement vanished. Defendant Sullivan said he wanted nothing to do with the project and voiced concern for the safety of his family if he remained involved.

10. On or about June 2020, Plaintiff and Defendant Sullivan met with Rudy Giuliani to sell COVID masks in the United States.   The subject changed to Plaintiff's repatriating billions of dollars to the United States from Africa. Mr. Giuliani was electrified by the opportunity and proposed an engagement letter.  It was signed by Plaintiff on July 1, 2020, including payment of a $50,000 retainer.  Defendant Sullivan reversed course once again. He voiced enthusiasm for the Plaintiff's multi-billion-dollar repatriation initiative and agreed to represent Plaintiff as his lawyer.  In Defendant's numerous subsequent messages to Plaintiff or third parties via email, text messages, or letters, Defendant Sullivan invariably represented himself as Plaintiff's lawyer.

11. On or about mid-July 2020, Plaintiff, represented by Defendant Sullivan, was interviewed via telephone by Department of Justice officials for approximately six hours ostensibly

vet Plaintiff and the legality of Plaintiff's proposed repatriation of billions of dollars to the United States Treasury from Africa.

12.  On July 21, 2020, the General Counsel of the Department of Treasury purported to sign a letter addressed to Defendant Sullivan authorizing Plaintiff to repatriate the funds to the United States Treasury via wire transfer. As stated anon, the letter was knowingly fabricated by Defendant Sullivan with the specific intent of deceiving Plaintiff into disclosing the whereabouts of the funds to be repatriated.  With knowledge of the funds' location, Defendant Sullivan schemed with multiple co-conspirators to steal the money for themselves while arranging for Plaintiff to be *hors de combat.*

13. On August 5, 2020, the General Counsel purportedly sent a companion letter to Defendant Sullivan providing the wiring instructions to repatriate Plaintiff's billions of dollars in Africa. On the same date, Defendant sent copies of the July 21, 2020, and August 5, 2020, letters to Plaintiff via UPS. As stated anon, the August 5, 2020, letter was knowingly fabricated by Defendant Sullivan with the specific intent of deceiving Plaintiff into disclosing the whereabouts of the funds to be repatriated.  With knowledge of the funds' location, Defendant Sullivan schemed with multiple co-conspirators to steal the money for themselves while arranging for Plaintiff to be *hors de combat.*

14. On or about December 3, 2020, Plaintiff traveled to Kenya to arrange for the repatriation of $10 billion to the United States Treasury. Defendant Sullivan was advised of the same. Defendant Sullivan stood by in the event his representation of Plaintiff was needed. Plaintiff had the $10 billion delivered to the Nairobi police department, where he was told he needed evidence that he was legitimately repatriating the funds to the United States government in order for the wire transfer from Kenya to move forward.

15. Plaintiff then called Defendant Sullivan on the phone in the early morning Sullivan's time and asked him to call the U.S. State Department via its Embassy in Nairobi to confirm the legitimacy of the wire transfer to the Nairobi police based on the July 21, 2020, and August 2, 2020, letters then unknown to Plaintiff to have been counterfeited by Defendant Sullivan.

16. Defendant Sullivan refused to call the U.S. State Department with the excuse of the early morning hour and instructed Plaintiff to abandon the $10 billion and return to the United States without explanation.

17. Plaintiff followed Defendant's instruction and returned to the United States.

18. On or about January 2021, Plaintiff was interviewed again by Department of Justice officials in Defendant's offices for 4-5 hours. The ostensible purpose was to further verify the legality and propriety of Plaintiff's repatriation of funds from Africa. The Department of Justice found nothing improper or dubious.

19. On or about July 14, 2021, Plaintiff traveled to Abidjan, Ivory Coast, to scout out the logistics of repatriating a minimum of $6 billion to the United States.

20. On or about July 17, 2021, Plaintiff returned to the United States and informed Defendant Sullivan of the $6 billion minimum repatriation. Defendant Sullivan told Plaintiff that he would have Department of Justice officials call the U.S. Embassy in Abidjan to confirm the authenticity of the July 21, 2021, and August 5, 2021, letters from the General Counsel of the Department of Treasury to Defendant.

21. Plaintiff returned to Abidjan on or about August 1, 2021. Plaintiff arranged for the transfer of more than $6 billion to the Abidjan police station.

22. On information and belief, Defendant Sullivan contemporaneously orchestrated a perfidious plan to shipwreck Plaintiff's repatriation and to discredit Plaintiff and have him arrested to enrich himself and co-conspirators, James R. Billington, Todd J. Brown, Michael Keilty, and John Does 1-10 from the billions of dollars to be repatriated whose location in Abidjan was then known based on Plaintiff's disclosures.

23. Mr. Billington was the Security Attache at the U.S. Department of State in Abidjan, Ivory Coast.

24. Mr. Brown was acting Assistant Secretary of State for diplomatic security in Washington, D.C.

25. Michael Keilty was an attorney in the U.S. Department of Justice, and a personal friend of Defendant Sullivan who had previously interrogated Plaintiff.

26. John Does 1-10 included the head of the Criminal Investigation Division of the Ivory Coast and a prosecutor for the Ivory Coast.

27. Defendant Sullivan, Billington, Brown, and Keilty all were U.S. Army Rangers or otherwise served in the United States military. They shared an *esprit de corps.*

28. Defendant Sullivan's treachery to Plaintiff was for the co-conspirators to steal and divide the more than $6 billion intended for Plaintiff to repatriate to the United States for themselves and to throw Plaintiff to the wolves to eliminate a witness to their thievery.

29. On information and belief, Defendant Sullivan received a generous portion of the more than $6 billion theft—at least $10 million.

30. Defendant Sullivan's plan to throw Plaintiff to the wolves and loot the money for himself and co-conspirators unfolded as follows.

31. The July 21, 2020, and August 5, 2020, letters from the General Counsel of the Department of Treasury to Defendant Sullivan had been knowingly counterfeited by Defendant Sullivan with the intent of deceiving Plaintiff and learning of the location of the billions of dollars to be repatriated to the United States from Africa.

32. Before or shortly after Plaintiff traveled back to Abidjan on August 1, 2020, Defendant Sullivan had spoken to the U.S. Embassy there asserting via email with Mr. James Billington that the above-referenced letters were authentic, and that Plaintiff's repatriation of the funds was legitimate. Defendant Sullivan's statements were a ruse to deceive Plaintiff into believing Defendant Sullivan was sincerely seeking to help him repatriate the billions of dollars to the United States Treasury.

33. On or about August 3, 2020, Plaintiff traveled from the Abidjan police station where the billions of dollars in cash was located to the United States Embassy. Per Defendant Sullivan's directions, Plaintiff asked to see Mr. Billington.

34. Mr. Billington appeared. Plaintiff delivered the July 21, 2020, and August 5, 2020, letters to him. Plaintiff then put Defendant Sullivan on the phone to participate in the conversation with Mr. Billington. The latter challenged the letters as counterfeit, and opined that Plaintiff, Defendant Sullivan, Rudy Giuliani, and former President Donald Trump would be prosecuted. Defendant Sullivan then provided Billinton with two names and phone numbers of persons associated with the U.S. Government to confirm the authenticity of the letters: former Treasury General Counsel Brian N. Callanan and Michael Keilty at the U.S. Department of Justice. Defendant Sullivan also told Billington directly that he had picked up the letters personally from the Department of Treasury.

35. Mr. Billington then disappeared for approximately 90 minutes while Plaintiff waited in the Embassy. Billington changed the subject matter. He was no longer interested in the letters. He voiced skepticism of the authenticity of Plaintiff's United Nations badge irrelevant to the repatriation of funds to the United States Treasury from Africa. Billington stated to Plaintiff he would be prosecuted for misrepresenting himself. Plaintiff urged Mr. Billington to make a personal examination of the more than $6 billion to be repatriated to the United States that could be examined nearby in the custody and control of the Abidjan Police. Billington staunchly refused without explanation. Billington also volunteered that he had contacted the U.S. Treasury Department to confirm the authenticity of the twin letters but had yet to receive a response. Billington told Plaintiff he was not free to go but he was also not under arrest or suspected of criminality. Billington stated he could detain Plaintiff and do whatever he wanted with Plaintiff. Three United States Marines prevented Plaintiff from leaving the Embassy and brandished machine guns.

36. After about 4 hours of *de facto* detention, Billington permitted Plaintiff to leave.

37. Plaintiff returned to his hotel in Abidjan. At approximately 6 AM the next morning of August 4, 2020, Plaintiff was arrested by 40 Abidjan policemen for alleged money laundering and misrepresenting official United States documents.

38. Plaintiff was then imprisoned with terrorists for one day.

39. On August 5, 2020, the head of the CID, who had been given the twin letters counterfeited by Defendant Sullivan from Billington, met with Plaintiff. The CID told Plaintiff they would travel in a car to a facility where Plaintiff believed additional abandoned money could be retrieved approximating $10 billion. The facility, however, contained illegal

drugs, diamonds, coffee, and counterfeit cash. The CID had arranged for the $10 billion in legitimate cash to be removed and stolen for himself in the previous 24 hours.

40. Plaintiff was then interrogated by the CID or his agents about his knowledge of the location of the $10 billion. Plaintiff answered all questions.

41. Plaintiff's Ivory Coast lawyer then arrived on the scene. All the CID personnel saluted respectfully. The CID personnel falsified Plaintiff's narrative in French to make it appear that Plaintiff was implicated in smuggling weapons to the UAE, Iraq, and Iran. Plaintiff refused to sign the falsified statement. Plaintiff's lawyer dictated a truthfully corrected narrative that deleted any assertion or implication that Plaintiff was involved in smuggling weapons.

42. Plaintiff, following his Ivory Coast lawyer's instructions, returned to his hotel, and departed to the United States the following day.

43. Defendant Sullivan was alerted by Plaintiff's friend and associate Josh Simcox that Plaintiff had been arrested on the morning of August 4, 2020. Defendant Sullivan emailed Billington on August 4, 2020, personally authenticating the two letters, and stating he had received them from an official in the General Counsel's office of the Treasury Department. Defendant Sullivan then went AWOL.

44. Plaintiff met with Defendant Sullivan on August 8, 2020, in Defendant's office in Washington, D.C.

45. Defendant Sullivan inquired whether Plaintiff would return to Ivory Coast to make another repatriation attempt of funds. Plaintiff said he would need seed money and airtight documentation to avoid the risk of another shipwreck. Plaintiff gave Defendant Sullivan

$1,000 taken from the cash to be repatriated from Africa. Defendant Sullivan untruthfully told Plaintiff he could get Plaintiff a black diplomatic passport.

46. Plaintiff left Defendant Sullivan's office for the airport to travel to Florida. Approximately 45 minutes after Plaintiff left, Defendant Sullivan called him and said Defendant Sullivan could not represent him any longer. Defendant Sullivan and falsely stated Plaintiff had been accused of criminality in both the United States and Ivory Coast and that Defendant Sullivan's family would be threatened if he continued to represent Plaintiff.

47. Plaintiff asked Defendant Sullivan, "Does that mean the documents you gave me were fake?" Defendant Sullivan immediately hung up the phone. Plaintiff and Defendant Sullivan have never communicated since.

48. Defendant Sullivan refused to sign an affidavit vouching for the authenticity of the July 21, 2020, and August 5, 2020, letters from the General Counsel of the Treasury Department to Defendant Sullivan on March 21, 2023. See Exhibit 1.

## COUNT 1-COMMON LAW FRAUD

49. Plaintiff realleges paragraphs 1-48 anew.

50. Defendant falsely represented to Plaintiff that the July 21, 2020, and August 5, 2021, letters from the General Counsel of the Treasury Department to Defendant were authentic.

51. Defendant knew the representations were false and that he had counterfeited the letters.

52. Defendant made the misrepresentations intending to deceive Plaintiff and with malice and spite.

53. The misrepresentations were material to Plaintiff's trust in Defendant and disclosure to him of the whereabouts of billions of dollars in cash in Ivory Coast and elsewhere in Africa.

54. Plaintiff relied on Defendant's knowing misrepresentations in traveling to Ivory Coast intending to repatriate more than $6 billion to the United States Treasury and informing Defendant of the location of the funds in Abidjan, Ivory Coast.

55. Plaintiff suffered damages proximately caused by Defendant's misrepresentations in an amount to be determined at trail, including false arrest, physical injuries, endangerment to his life, time lost and expenses incurred in bringing the cash to be repatriated to the Abidjan police station, emotional and psychological distress, and the loss of an opportunity for a large whistleblower award under United States law for repatriating more than $6 billion to the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief against Defendant Sullivan:

(a) Compensatory damages on Count 1 in an amount to be determined at trial, including disgorgement of all funds stolen from the more than $6 billion intended for repatriation to the United States Treasury from Ivory Coast;

(b) Punitive damages on Count 1 in an amount to be determined at trial;

(c) Attorney's fees;

(d) Costs and pre-judgment interest; and,

(e) Such other relief that the Court finds just and proper.

## JURY TRIAL

Plaintiff requests a jury trial.

Respectfully submitted,

*/s/Bruce Fein*
Law Offices of Bruce Fein
300 New Jersey Avenue, N.W., Suite 900
Washington, D.C. 20001
Phone:  202-465-8728; 703-963-4968 (cell)
Email: bruce@feinpoints.com

**EXHIBIT 1**



Law Offices of Bruce Fein
300 New Jersey Avenue, N.W., Suite 900
Washington, D.C. 20001
Phone: 202-465-8728; 703-963-4968
Email: bruce@feinpoints.com
www.lawofficesofbrucefein.com

March 21, 2023

Honorable Eugene R. Sullivan
2550 M Street, NW
Washington, D.C. 20037
Via Email: judgesullivan@freehsporkinsullivan.comn

RE: Authenticating July 21, 2020, and August 5, 2020, Letters from former Department of Treasury General Counsel Brian R. Callanan to you concerning wiring United States funds discovered by Iztok Plevnik

Dear Judge Sullivan:

I represent Iztok Plevnik in the above-referenced matter.

Mr. Plevnik has encountered anguishing tribulations and injuries because of an inability to authenticate the above-referenced letters to you from the then General Counsel of the Department of Treasury, Brian R. Callanan, concerning the transfer of an eye-opening amount of money from my client to the United States Treasury.

Accordingly, to assist in alleviating or remedying Mr. Plevnik's damages, I am respectfully requesting that you sign and notarize within 24 hours the attached affidavit. Exhibit 1. It asks no more than that you state under oath what you have already stated while not under oath.

I am also attaching additional documents to assist in refreshing your recollection.

Exhibit 2 is a copy of the July 21, 2020, letter discussing an electronic funds transfer and wiring instructions for Mr. Plevnik.

Exhibit 3 is a copy of the August 5, 2020, letter providing the FEDWIRE instructions for Mr. Plevnik.

Exhibit 4 is an email from you to Michael Keilty at the Department of Justice attaching the twin letters and offering to discuss the immediate transfer of funds in the custody of Mr. Plevnik.

Exhibit 5 is an email from you to Diplomatic Security Officer James Billington in which you state, among other things, that the twin letters were signed by "the General Counsel of US

Treasury, Brian R. Callanan," and that he "can confirm that he signed the attached documents that were delivered to me in his official capacity…"

Exhibit 6 is an email from you to Mr. Billington stating, among other things, "These are copies of the official DOT documents I was handed by an official of the General Counsel's office at DOT—*I authenticate them*—as you can see I passed them on to DOJ." (Italics supplied).

Exhibit 7 shows receipt by Mr. Plevnik from you of the twin letters via UPS.

We will be pursing all avenues of legal redress for the nightmares and worse Mr. Plevnik has suffered related to the authenticity of the twin letters.

If you have any questions about the attached Affidavit, please call or email. I would be grateful if you would email me a notarized copy of the Affidavit in addition to returning the original or hard copy to me via FEDEX or USPS.

We submit that with good faith and candor from all parties, this matter can be resolved swiftly and amicably.

Sincerely,

Bruce Fein

**EXHIBIT 1**

AFFIDAVIT OF EUGENE R. SULLIVAN

I, Eugene R. Sullivan, being sworn, hereby say and depose based on personal knowledge:

1. I am over 21 years of age and of sound mind.

2. The attached letters to me, reproduced as Exhibits 1 and 2 to this Affidavit, from Brian R. Callanan, then General Counsel of the Department of Treasury, to me dated July 21, 2020, and August 5, 2020, respectively are authentic.

3. The twin letters were personally delivered to me by the General Counsel or an official in his office at the Department of Treasury.

4. I subsequently sent copies of the twin letters to Iztok Plevnik via UPS on August 5, 2020.


_____          Date:

Eugene R. Sullivan

**EXHIBIT 1**



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

July 21, 2020

The Honorable Eugene R. Sullivan
2550 M Street, NW
Washington, DC 20037

VIA EMAIL: JudgeSullivan@west-point.org

Dear Judge Sullivan:

I am writing in response to your offer on behalf of your client to transfer funds to the Department of the Treasury as evidence of your client's good faith and credibility. Treasury's interest in this matter is based on the potential illicit finance risks posed by your client's reportedly substantial overseas U.S. dollar holdings. After consultation with the Department of Justice, the Secretary has authorized me to inform you that Treasury is prepared to receive an electronic funds transfer and will provide wire instructions. These funds would be accepted pursuant to 31 U.S.C. § 3302 as an unconditional gift to the United States.

You also inquired on behalf of your client about the possibility of a financial reward for your client's transfer of funds. This request raises legal questions that require further review, and we understand that the Department of Justice is still conducting the necessary fact-finding with your client's assistance. Although the United States cannot agree to payment of a reward at this time, the Secretary has authorized me to commit that any funds transferred by your client will be accounted for in the calculation of a financial reward, if any, that Treasury can lawfully pay.

Sincerely,

Brian R. Callanan
General Counsel

EXHIBIT 2



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

August 5, 2020

The Honorable Eugene R. Sullivan
2550 M Street, NW
Washington, DC 20037

Dear Judge Sullivan:

You requested instructions concerning how your client, Mr. Iztok Plevnik, whom you have described as chief executive officer and owner of IPB-SI, LLC, can make a gift to the United States. The U.S. Department of the Treasury may accept unconditional gifts pursuant to 31 U.S.C. § 3302. Attached please find Fedwire instructions for making such gifts.

Sincerely,

Brian R. Callanan
General Counsel



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D C

## UNITED STATES DEPARTMENT OF THE TREASURY

### *FEDWIRE INSTRUCTIONS*

**If you wish to make an unconditional gift to the United States, please provide the following instructions to your financial institution for the remittance of Fedwire payments to the United States Department of the Treasury.**

| Fedwire Field Tag | Fedwire Field Name | Required Information |
|---|---|---|
| {1510} | Type/Subtype | 1000 |
| {2000} | Amount | |
| {3400} | Receiver ABA routing number * | 021030004 |
| {3400} | Receiver ABA short name | **TREAS NYC** |
| {3600} | Business Function Code | **CTR** |
| {4200} | Beneficiary Identifier (account number) | 820180002000 |
| {4200} | Beneficiary Name | **Fiscal Service – Credit Accounting Branch** |
| {6000} | Originator to Beneficiary Information – Line 1 | **United States Department of the Treasury** |

\* The financial institution address for Treasury's routing number is 33 Liberty Street, New York, NY  10045

Scanned with CamScanner

**EXHIBIT 2**



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C.

July 21, 2020

The Honorable Eugene R. Sullivan
2550 M Street, NW
Washington, DC 20037

VIA EMAIL: JudgeSullivan@west-point.org

Dear Judge Sullivan:

I am writing in response to your offer on behalf of your client to transfer funds to the Department of the Treasury as evidence of your client's good faith and credibility. Treasury's interest in this matter is based on the potential illicit finance risks posed by your client's reportedly substantial overseas U.S. dollar holdings. After consultation with the Department of Justice, the Secretary has authorized me to inform you that Treasury is prepared to receive an electronic funds transfer and will provide wire instructions. These funds would be accepted pursuant to 31 U.S.C. § 3302 as an unconditional gift to the United States.

You also inquired on behalf of your client about the possibility of a financial reward for your client's transfer of funds. This request raises legal questions that require further review, and we understand that the Department of Justice is still conducting the necessary fact-finding with your client's assistance. Although the United States cannot agree to payment of a reward at this time, the Secretary has authorized me to commit that any funds transferred by your client will be accounted for in the calculation of a financial reward, if any, that Treasury can lawfully pay.

Sincerely,

Brian R. Callanan
General Counsel

**EXHIBIT 3**



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

August 5, 2020

The Honorable Eugene R. Sullivan
2550 M Street, NW
Washington, DC 20037

Dear Judge Sullivan:

You requested instructions concerning how your client, Mr. Iztok Plevnik, whom you have described as chief executive officer and owner of IPB-SI, LLC, can make a gift to the United States. The U.S. Department of the Treasury may accept unconditional gifts pursuant to 31 U.S.C. § 3302. Attached please find Fedwire instructions for making such gifts.

Sincerely,

Brian R. Callanan
General Counsel



DEPARTMENT OF THE TREASURY
WASHINGTON D C

## UNITED STATES DEPARTMENT OF THE TREASURY

### *FEDWIRE INSTRUCTIONS*

If you wish to make an unconditional gift to the United States, please provide the following instructions to your financial institution for the remittance of Fedwire payments to the United States Department of the Treasury.

| Fedwire Field Tag | Fedwire Field Name | Required Information |
|---|---|---|
| {1510} | Type/Subtype | 1000 |
| {2000} | Amount | |
| {3400} | Receiver ABA routing number * | 021030004 |
| {3400} | Receiver ABA short name | TREAS NYC |
| {3600} | Business Function Code | CTR |
| {4200} | Beneficiary Identifier (account number) | 820180002000 |
| {4200} | Beneficiary Name | Fiscal Service – Credit Accounting Branch |
| {6000} | Originator to Beneficiary Information – Line 1 | United States Department of the Treasury |

* The financial institution address for Treasury's routing number is 33 Liberty Street, New York, NY 10045

Scanned with CamScanner

**EXHIBIT 4**

Mobile + 202 390 5959

Begin forwarded message:

**From:** Judge Sullivan
<Judgesullivan@freehsporkinsullivan.com>
**Date:** August 4, 2021 at 1:47:36 PM EDT
**To:** Judge Sullivan
<Judgesullivan@freehsporkinsullivan.com>
**Subject: Fwd: Treasury Correspondence**

Judge Sullivan

Mobile + 202 390 5959

Begin forwarded message:

**From:** Judge Sullivan
<Judgesullivan@freehsporkinsullivan.co
m>
**Date:** April 25, 2021 at 10:23:59 PM
EDT
**To:** Michael.keilty@usdoj.gov
**Cc:** Judge Sullivan
<Judgesullivan@freehsporkinsullivan.co
m>, Gene Sullivan
<esullivan@freehsporkinsullivan.com>
**Subject: FW: Treasury Correspondence**

## Michael,

## Per your request, attached are the DOT letters re the US currency my client has possession and control over + his

desire to gift part of his holdings to the USG.


    I am available to meet and discuss the arrangement for the immediate transfer of funds before the funds fall into terrorists' hands.


**Respectfully submitted,  Gene**


**Hon. Eugene R. Sullivan**

**2550 M St. NW, First Floor**

**Washington D.C. 20037 USA**

**Mobile +202 390 5959**

desire to gift part of his holdings to the USG.


I am available to meet and discuss the arrangement for the immediate transfer of funds before the funds fall into terrorists' hands.


Respectfully submitted,   Gene


Hon. Eugene R. Sullivan

2550 M St. NW, First Floor

Washington D.C. 20037 USA

Mobile +202 390 5959

**EXHIBIT 5**

**Bruce Fein**

| | |
|---|---|
| **From:** | Joshua Simcox <joshua.simcox@gmail.com> |
| **Sent:** | Monday, March 20, 2023 4:31 PM |
| **To:** | JOHN/C KIRIAKOU; Bruce Fein |
| **Subject:** | Fwd: FW: Treasury Correspondence |
| **Attachments:** | HPSCAN_20210425194828265_2021-04-25_194917432.pdf; HPSCAN_20210425195012738_2021-04-25_195102615.pdf; HPSCAN_20210425194629109_2021-04-25_194718325.pdf |

---------- Forwarded message ----------
From: **Judge Sullivan** <judgesullivan@freehsporkinsullivan.com>
Date: Thu, Aug 5, 2021, 06:10
Subject: FW: Treasury Correspondence
To: <billingtonJR@state.gov>
Cc: <Joshua.simcox@gmail.com>, <Hedili.galbi@pershinglaw.com>, Judge Sullivan <JudgeSullivan@west-point.org>

# URGENT

## Dear Dip. Security Officer Billington,

1. **You have told me you are conducting an USG investigation to confirm that the attached US Treasury documents are authentic.**

2. **The person who signed those documents was the General Counsel of the US Treasury, Brian R. Callanan.**

3. **Mr. Callanan can be reached at his private mobile phone in the Washington D.C. area (202 288 9793). In addition his email is brcallanan@gmail.com. He can confirm that he signed the attached documents that were delivered to me in his official capacity and that " After consultation with the Department of Justice, the Secretary {of Treasury} has authorized me inform you..." pursuant to the DOT letter of July 21, 2020.**

1

4. **I strongly request that you immediately call Mr. Callanan to confirm that these documents are "real".**

5. **It is imperative that you immediately seek the release of Mr. Plevnik because it is my belief that his life is in danger while he is in the local prison with suspected terrorists.**

**Respectfully submitted,**

**Eugene Sullivan**

**Hon. Eugene R. Sullivan**

**2550 M St. NW, First Floor**

**Washington D.C. 20037 USA**

**Mobile +202 390 5959**

From: Judge Sullivan <judgesullivan@freehsporkinsullivan.com>
Sent: Thursday, August 5, 2021 4:49 AM
To: Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
Cc: billingtonJR@state.gov
Subject: Re: Treasury Correspondence

RESEND

4. I strongly request that you immediately call Mr. Callanan to confirm that these documents are "real".

5. It is imperative that you immediately seek the release of Mr. Plevnik because it is my belief that his life is in danger while he is in the local prison with suspected terrorists.

Respectfully submitted,

Eugene Sullivan

Hon. Eugene R. Sullivan

2550 M St. NW, First Floor

Washington D.C. 20037 USA

Mobile +202 390 5959

**From:** Judge Sullivan <judgesullivan@freehsporkinsullivan.com>
**Sent:** Thursday, August 5, 2021 4:49 AM
**To:** Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
**Cc:** billingtonJR@state.gov
**Subject:** Re: Treasury Correspondence

RESEND

**EXHIBIT 6**

## Bruce Fein

| | |
|---|---|
| **From:** | Joshua Simcox <joshua.simcox@gmail.com> |
| **Sent:** | Monday, March 20, 2023 4:29 PM |
| **To:** | JOHN/C KIRIAKOU; Bruce Fein; Iztok Plevnik |
| **Subject:** | Fwd: Treasury Correspondence |
| **Attachments:** | HPSCAN_20210425194828265_2021-04-25_194917432.pdf; HPSCAN_20210425195012738_2021-04-25_195102615.pdf; HPSCAN_20210425194629109_2021-04-25_194718325.pdf |

Sullivan says below that he was handed the docs in Callanans office. And offers Callanans private details to Billington. We can send same to Callanan.

Josh

---------- Forwarded message ---------
From: **Judge Sullivan** <judgesullivan@freehsporkinsullivan.com>
Date: Thu, Aug 5, 2021, 04:49
Subject: Re: Treasury Correspondence
To: Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
Cc: <billingtonJR@state.gov>

RESEND

Judge Sullivan
+202 390 5959 (mobile)

> On Aug 4, 2021, at 2:53 PM, Judge Sullivan <Judgesullivan@freehsporkinsullivan.com> wrote:
>
> Dear James
>
> These are copies of the official DOT documents I was handed by an official of the General Counsel's office at DOT—- I authenticate them —— as you can see I passed them to DOJ
>
> Any questions please call me
>
> Judge Sullivan
> Mobile + 202 390 5959
>
>
> Begin forwarded message:
>
>> From: Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
>> Date: August 4, 2021 at 1:47:36 PM EDT
>> To: Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
>> Subject: Fwd: Treasury Correspondence

1

Judge Sullivan
Mobile + 202 390 5959

Begin forwarded message:

> **From:** Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>
> **Date:** April 25, 2021 at 10:23:59 PM EDT
> **To:** Michael.keilty@usdoj.gov
> **Cc:** Judge Sullivan <Judgesullivan@freehsporkinsullivan.com>, Gene
> Sullivan <esullivan@freehsporkinsullivan.com>
> **Subject: FW: Treasury Correspondence**

**Michael,**

   **Per your request, attached are the DOT letters re the US currency my client has possession and control over + his desire to gift part of his holdings to the USG.**

   **I am available to meet and discuss the arrangement for the immediate transfer of funds before the funds fall into terrorists' hands.**

**Respectfully submitted,   Gene**

**Hon. Eugene R. Sullivan**

**2550 M St. NW, First Floor**

**Washington D.C. 20037 USA**

**Mobile +202 390 5959**

2

**EXHIBIT 7**

EUGENE SULLIVAN
(202) 380-5959
THE UPS STORE #6395
5237 RIVER RD
BETHESDA  MD 20816

0 1 LBS LTR 1 OF 1
SHP WT: LTR
DATE: 05 AUG 2020

SHIP IZTOK PLEVNIK
TO: IPB-SI LLC
    8962 SE RIVERFRONT TER

TEQUESTA  FL 33469-1826



FL 334 0-05

UPS NEXT DAY AIR                1

TRACKING #: 1Z E3Y 574 01 0410 0837



BILLING: P/P

REF 01: DK

ISH 13.00M ZZP 450 31.5V 07/2020



SEE NOTICE ON REVERSE regarding UPS terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.