UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IZTOK PLEVNIK**, | |
| Plaintiff, | |
| v. | Case No. 23-cv-837 (CRC) |
| **EUGENE R. SULLIVAN, *et al.*,** | |
| Defendants. | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Iztok Plevnik claims he discovered over six billion dollars that had been taken from Libya following the death of Muammar Gaddafi and was on a quest to repatriate the funds to the United States Treasury. Along the way, he alleges that three federal employees and two private lawyers conspired against him to steal the money, resulting in his arrest and brief detention in the Ivory Coast. Seeking compensation for these indignities, including disgorgement of the loot, Mr. Plevnik brought this suit for common law fraud against all five individuals. The United States government has substituted itself for the three named federal defendants pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(1), and moved to dismiss the complaint on the grounds of sovereign immunity. Because Plevnik has not rebutted the Attorney General's certification that the federal defendants were acting within the scope of their employment at the time of their alleged conduct, the Court will uphold the certification, substitute the United States for the individual federal defendants, and construe Plevnik's claim against the government as having been brought under the Federal Tort Claims Act ("FTCA"). The Court will then proceed to grant the government's motion to dismiss the claim against it with prejudice because, as Plevnik concedes, at least two exceptions to the United States' waiver of sovereign immunity in the FTCA are plain from the face of the complaint.

## I.    Background

The Court draws the following background from the factual allegations in the amended

complaint, which was filed within 21 days of the original complaint.  See Fed. R. Civ. P.

15(a)(1)(A).  While the defendants surely contest many of the allegations, the Court must accept

them as true in considering the government's motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009).

Iztok Plevnik is a permanent resident of the United States, currently residing in Florida.

Am. Compl. ¶¶ 1, 4.  In 2017, Plevnik claims that he embarked on an effort to repatriate to the

United States between six and ten billion dollars that "had been scattered from Libya after the

2011 overthrow and killing of Libya's dictator Muammar Gaddafi."  Id. ¶¶ 10–11.  As a first

step, Plevnik enlisted the help of Eugene R. Sullivan I, a lawyer based in the District of

Columbia.  Id. ¶¶ 10–14.  Plevnik met with Sullivan four times before Sullivan, upon the

payment of a $50,000 retainer, agreed to represent him.  Id.  In February 2021, Sullivan brought

several attorneys from the U.S. Department of Justice ("DOJ") to his office to interview Plevnik

about the location of the supposed booty, including DOJ attorney Michael Keilty.  Id. ¶ 15.

Sullivan's son, Gene Sullivan II, also attended the interview.  Id.  Sullivan then sent Plevnik two

letters that he had received from the General Counsel of the Treasury Department.  Id. ¶¶ 17–18.

Plevnik claims the letters authorized him to repatriate the funds via wire transfer.  Id.  With the

letters in hand, Plevnik traveled first to Kenya in December 2020 and then to the Ivory Coast in

July and August 2021 to make arrangements to collect the cash.  Id. ¶¶ 19, 23, 25.  On the third

trip, as directed by Sullivan, Plevnik asked to speak with James Billington, a State Department

security attaché at the U.S. Embassy in Abidjan.  Id. ¶¶ 35–36.  Billington questioned the

authenticity of the letters Plevnik presented and blocked him from leaving the embassy for

approximately four hours.  Id. ¶¶ 37–38, 41.  The next morning, Plevnik was arrested at his hotel

by local law enforcement for alleged money laundering and misrepresentation of official United

States documents.  Id. ¶ 42.  He was then imprisoned in Abidjan for one day.  Id. ¶ 43.

Meanwhile, Plevnik alleges that the cash was stolen from its holding place at an Abidjan police

station.  Id. ¶ 39.  Plevnik now seeks compensatory and punitive damages for his injuries

resulting from this ordeal, including disgorgement of all "stolen" funds.  Id. at 12–13.

     In addition to Sullivan and his son, Plevnik named three federal employees as defendants

in his complaint: Mr. Keilty, the DOJ lawyer who interviewed him at Sullivan's office; Mr.

Billington, the State Department security attaché who questioned him at the U.S. Embassy in

Abidjan; and Todd Brown, the then Acting Assistant Secretary of State for Diplomatic Security

and Mr. Billington's supervisor.  Id. ¶¶ 7–9.  The complaint, filed in March 2023 and amended in

April 2023, asserts one count of common-law fraud alleging that the five defendants "entered a

conspiracy" in February 2021 "to steal the money for themselves while arranging for Plaintiff to

be *hors de combat.*"  Id. ¶¶ 16–17, 54–59.  All the defendants have moved to dismiss.  This

ruling addresses the government's motion only.

## II.  Legal Standards

     The government has moved for dismissal pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).  To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of

demonstrating that the Court possesses subject matter jurisdiction over his claims.  See

Georgiades v. Martin–Trigona, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984) (citing McNutt v. Gen.

Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  The Court must accept the factual

allegations in the complaint as true but it also "may consider materials outside the pleadings in

deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

While "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction, [Rule] 12(b)(6) presents a ruling on the merits with res judicata effect." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987).  On a 12(b)(6) motion, it is the defendant who bears the burden of proof, and "dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (citation and internal quotation marks omitted).  A court evaluating a Rule 12(b)(6) motion will "construe the complaint 'liberally,' granting the plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## III.   Analysis

The United States seeks to substitute itself for the federal defendants pursuant to the Westfall Act and to dismiss this action on the basis of sovereign immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.  See United States' Mot. to Dismiss ("Gov't Mot. Dismiss") at 5–7.  The Westfall Act requires substitution of the United States in place of a defendant federal employee where the Attorney General has certified that the employee was "acting within the scope of his office or employment at the time of the incident out of which the claim arose."  See 28 U.S.C. § 2679(d)(1).  A plaintiff "may contest the Attorney General's scope-of-employment certification before a district court," Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009), but "[o]nce a court determines that the federal employee acted within the scope of employment, the case is, *inter alia*, restyled as an action against the United States that is governed by the [FTCA]." Council on Am. Islamic Rels. v.

Ballenger, 444 F.3d 659, 662 (D.C. Cir. 2006); see also De Martinez v. Lamagno, 515 U.S. 417, 420 (1995).

Plevnik's amended complaint is styled as a state-law tort action seeking money damages against all five defendants, including the three employees of the United States.  See Am. Compl. at 12–13.  The Attorney General has certified that the federal employees "were acting within the scope of their employment . . . at the time of the incidents alleged in this action," therefore substituting the United States in their place and transforming the suit from a state tort action into one governed by the FTCA.  See Notice of Westfall Certification at 1.  Plevnik challenges the certification but appears to accept that the FTCA would govern this action and bar his recovery against the United States if the certification were upheld.  See Pl.'s Opp'n at 4–7.  Accordingly, the Court will first address the sufficiency of the government's certification before turning to its motion to dismiss.

A.  Westfall Substitution

Westfall Act certification is *prima facie* evidence that a federal employee was acting within the scope of his employment.  See Ballenger, 444 F.3d at 662.  As a result, Plevnik "bears the burden of coming forward with specific facts rebutting the certification."  Stokes v. Cross, 327 F.3d 1210, 1214 (D.C. Cir. 2003) (quoting Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996)).  In his opposition to the motion to dismiss, Plevnik contends that the federal defendants do not meet the requirements for acting within the "scope of employment" under D.C. law as required by the Westfall Act.  See Pl.'s Opp'n at 5–7.  The government counters that its employees were "on the job" at the time of their alleged conduct and that no more is required to support the certification.  United States' Reply ("Gov't Reply") at 2.

In evaluating the sufficiency of a Westfall certification, courts apply the law on

*respondeat superior* liability of the state where the alleged tort occurred, which the parties here

agree is the District of Columbia.  See Wuterich, 562 F.3d at 383; Gov't Reply at 2–3.  To fall

within the "scope of employment," D.C. law requires that the employee's conduct be (a) "of the

kind he is employed to perform"; (b) "substantially within the authorized time and space limits";

(c) "actuated, at least in part, by a purpose to serve the master"; and (d) with respect to any

intentional use of force, "not unexpectable by the master."  Moseley v. Second New St. Paul

Baptist Church, 534 A.2d 346, 348 n.4 (D.C. 1987) (adopting the definition from

RESTATEMENT (SECOND) OF AGENCY § 228(1) (1957)).  Plevnik contends that

requirements (a) and (c) are not met here because (1) "conspiring to commit common law fraud

to deprive the United States of more than $6 billion in repatriated dollars is not of the type [of

activity the defendants] were hired by the United States to perform" and (2) the defendants were

"motivated solely to benefit themselves" and therefore their actions were "not actuated to benefit

their employer, the United States, in any respect."  See Pl.'s Opp'n at 5–7.  The Court disagrees.

### 1.  Nature of the Alleged Conduct

The conduct that Plevnik alleges the federal defendants undertook is "of the kind" each of

them was employed to perform.  "To qualify as conduct of the kind an employee was to perform,

his or her actions must have either been of the same general nature as that authorized or

incidental to the conduct authorized."  Allaithi v. Rumsfeld, 753 F.3d 1327, 1332 (D.C. Cir.

2014) (cleaned up).  "Conduct is 'incidental' so long as it is 'foreseeable'—that is, it must be a

'direct outgrowth of the employee's instructions or job assignment.'"  Id. (quoting Haddon v.

United States, 68 F.3d 1420, 1424 (D.C. Cir. 1995)); see also Smith v. Clinton, 886 F.3d 122,

127 (D.C. Cir. 2018) ("What matters is whether the underlying activity itself was part of the

employee's duties."). As the government notes, Plevnik cannot merely "assert[] that the Government Employees' conduct is unlike their typical duties" to defeat Westfall certification. See Gov't Reply at 2. Instead, the complaint must plausibly allege that the employees' conduct was neither of the same general nature as, nor the foreseeable result of, their authorized duties.

Starting with Mr. Keilty, Plevnik alleges that he participated in the alleged fraud by "extracting from Plaintiff the whereabouts of billions of dollars in [the] Ivory Coast intended for repatriation." Pl.'s Opp'n at 6. Keilty did so, according to the amended complaint, by interviewing Plevnik along with other DOJ attorneys about the supposed location of the cash. Am. Compl. ¶ 15. In assessing whether this conduct was within the scope of Keilty's employment, the Court must "look beyond alleged intentional torts themselves" to the specific conduct alleged. Ballenger, 444 F.3d at 664. As the government points out, one of DOJ's many functions is to "recover assets in foreign countries." Gov't Reply at 4–5 (citing Money Laundering and Asset Recovery Section (MLARS), Dep't of Just., https://perma.cc/2ZNQ-US9). And Plevnik offers nothing to suggest that Keilty's duties as a DOJ attorney did not encompass asset recovery or, indeed, investigating the bona fides of persons seeking the government's assistance in extracting billions of dollars from a sovereign nation. Accordingly, Plevnik has failed to show that Keilty's alleged activities were not "of the same general nature" as those he was authorized to perform and, therefore, that he was acting outside the scope of his employment.

Moving to Todd Brown, Plevnik alleges that Brown's duties as Acting Assistant Secretary of State for Diplomatic Security did not include "facilitating [Plevnik's] speedy entry into the U.S. Embassy in Abidjan, Ivory Coast, to meet with Federal Defendant Billington as part of the conspiracy to commit common law fraud." Pl.'s Opp'n at 6–7 (citing 1 Foreign Affairs

Manual 261.1 Responsibilities). As an initial matter, the only specific allegations in the amended complaint concerning Brown are that he was in the Army Rangers like other defendants and that he supervised Billington. Am. Compl. ¶¶ 8, 32. Plevnik cannot amend his complaint through subsequent briefing to state a claim against Brown based on facilitating his entry into the embassy. See Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) (collecting cases). But Plevnik has not shown that this purported conduct fell outside the scope of Brown's employment in any case. Again, the Court must "look beyond alleged intentional torts themselves" to the specific conduct alleged in determining whether the conduct was within the scope of employment. Ballenger, 444 F.3d at 664; see also Gov't Reply at 3. Assisting Plevnik's entry into the U.S. Embassy in Abidjan to meet with a security attaché is plainly consistent with Brown's responsibilities as a diplomatic security officer, including "operating post security and protective functions abroad." 1 Foreign Affairs Manual 261.1(b)(2). So, even if Plevnik had challenged this conduct in his amended complaint, he would have failed to rebut the Attorney General's certification that Brown was acting within the scope of his employment.

Lastly, Mr. Billington. Plevnik contends that Billington "arbitrarily detain[ing] Plaintiff for long hours in the Embassy without cause" was outside the scope of his authority. See Pl.'s Opp'n at 7. But Billington's role as an embassy security attaché self-evidently includes questioning and, if necessary, detaining individuals at the embassy who present potentially fraudulent government documents. Gov't Reply at 5–6. Even if Plevnik's detention was ultimately erroneous, holding individuals pending verification of their identity and intentions fits squarely within Billington's duty to keep the embassy secure. See id.; cf. Allaithi, 753 F.3d at 1332 (finding that a government employee's continued shackling and chaining of detainees after they were cleared as non-enemy combatants was conduct incidental to the detention and

interrogation of suspected enemy combatants).  Therefore, Billington was also acting within the scope of his authority.

### 2. *Purpose of the Alleged Conduct*

Plevnik also challenges the government's Westfall certification on the grounds that the federal defendants' conduct was not "actuated, at least in part, by a purpose to serve the master," and as a result they were acting outside the scope of their employment.  Pl.'s Opp'n at 5 (citing RESTATEMENT (SECOND) OF AGENCY § 228(1)(c)).  To rebut the Attorney General's certification to the contrary, Plevnik must come forward with specific facts proving that each employee was "*solely* motivated by his own purposes." Allaithi, 753 F.3d at 1333.  "[E]ven a *partial* desire to serve the master is sufficient" to uphold a Westfall certification.  Ballenger, 444 F.3d at 665 (citing RESTATEMENT (SECOND) OF AGENCY § 228(1)(c)).  As the government highlights, the potentially wrongful nature of the activities is irrelevant.  See Smith, 886 F.3d at 126 ("Extensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment . . . does not take that conduct outside the scope of employment.").  Plevnik has failed to make this showing.

To show that the federal defendants were "motivated solely to benefit themselves," Plevnik argues that their fraudulent conspiracy "injure[d] the United States financially by denying the United States Treasury billions of dollars in repatriated funds" and that the fraud was orchestrated by a private party, Sullivan, not a United States official.  Pl.'s Opp'n at 5–6.  The government counters that the federal defendants' conduct "advances the purposes of the Government" and therefore they were motivated, at least in part, to serve their employer.  Gov't Reply at 8.  Per the amended complaint, Keilty "interviewed Plaintiff to learn the location of funds allegedly owned by the United States"; Billington "tried to authenticate purported Treasury

Department letters"; and Brown merely supervised Billington, an explicit requirement of his role. Id.; see Am. Compl. ¶¶ 8, 15, 38.  Plevnik has failed to present any specific facts showing that the federal employees undertook these job-related activities *solely* for their own purposes.

Accordingly, Plevnik has failed to rebut the Attorney General's Westfall certification. The Court will, therefore, substitute the United States for the three named federal defendants in the amended complaint and treat the claim against the United States as governed by the FTCA. See De Martinez, 515 U.S. at 420.

    B.  Subject Matter Jurisdiction

With the proper defendant in place, the Court turns to its subject matter jurisdiction over Plevnik's claim against the United States.  The government's sovereign immunity is "jurisdictional in nature" and Plevnik "bears the burden of proving that the government has unequivocally waived its immunity."  Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003).  The FTCA confers jurisdiction over civil claims for money damages like Plevnik's where they are "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  This is a "limited waiver of the government's sovereign immunity," subject to several exceptions.  See Tri-State Hospital Supply Corp., 341 F.3d at 575; see also 28 U.S.C. § 2680.

The government identifies three such exceptions as applicable here:  The FTCA does not waive sovereign immunity if (1) the claim arises out of an enumerated intentional tort, including

misrepresentation (28 U.S.C. § 2680(h)); (2) the claim arises in a foreign country[1] (28 U.S.C. § 2680(k)); or (3) the plaintiff has failed to exhaust his administrative remedies (28 U.S.C. § 2675(a)).  See Gov't Mot. Dismiss at 5–8.  Plevnik does not contest any of these defenses in his opposition and therefore concedes them.  See Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (citing Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).  In any case, the first two waiver exceptions—the claim is based on an intentional tort and arose abroad—are plain from the face of the complaint.  The Court therefore lacks subject matter jurisdiction over Plevnik's claim against the United States and it must be dismissed.

## IV.   Conclusion

For these reasons, it is hereby

**ORDERED** that [Dkt. No. 25] Defendant United States' Motion to Dismiss is GRANTED.  Having been substituted for Defendants James R. Billington, Todd J. Brown, and Michael Keilty, the United States is hereby dismissed from the case.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: November 3, 2023

---

[1]  Though much of the government's allegedly tortious conduct took place in Washington, D.C., "the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred."  See Sosa v. Alvarez-Machain, 542 U.S. 692, 712 (2004).